## THE STATE OF WISCONSIN,

*vs.*

## EDWIN GREEN.

The allegation in an indictment for obtaining goods by false pretences, that the defendant falsely represented that he was a, wholesale grocery dealer in New Orleans, and that he had money on deposite with C D. & Co. in New York City, to the full amount of the value of the goods or money obtained, is not sufficient to constitute a criminal offence, without an averment that the party defrauded was induced to part with his property, by relying upon the truth of such statements.

On the trial of an indictment for obtaining goods by false pretences, the prosecution will be confined in the proof to the pretences set forth in the indictment.

In order to sustain a conviction for obtaining goods by false pretences, it must be averred in the indictment and proved on the trial, that the party defrauded was induced to part with his property in consequence of such representations.

What constitutes false pretences under the statute ?

This case came up from Dane Circuit, on the report of the judge of questions of law arising on the trial, for the advice and opinion of this court. The indictment is substantially set out in the opinion of the court. The report of the judge is as follows :

" This cause having been brought to trial in the circuit court for said State, held in and for the county of Dane, at the November term of said court in the year 1858, before the undersigned, the judge appointed by law to hold the said term of the court; and the said defendant having been convicted in said circuit court of the charge in the said indictment mentioned ; and several questions of law having arisen as well upon introduction of evidence, as upon the sufficiency of the indictment, on a motion in arrest of judgment; and said questions of law being in the opinion of the said judge who tried

said cause, so important and so doubtful as to require the decision of the supreme court of said State thereon ; and the said defendant having signified his consent to the taking of said opinion of the said supreme court upon the said questions.

Therefore, I, Luther S. Dixon, the judge of the ninth judicial circuit of the State of Wisconsin, in and for the county of Dane, in the November term thereof, in the year one thousand eight hundred and fifty-eight, do report that said cause came on to be tried, upon the indictment herewith reported, by a jury; and I further report, that the defendant was found guilty by the verdict of said jury ; and I further report, that the several questions as to the introduction of evidence, and as to the arrest of judgment, are more fully set forth in the following

### REPORT OF EVIDENCE, OBJECTION TO EVIDENCE, AND MOTION IN ARREST OF JUDGMENT.

The prosecution to make out and prove the charge in the said indictment, introduced as a witness,

*George Paine*—Who testified that he resided in Madison, and was a dealer in drugs and medicines. My partner's name is John Wright. Our co-partnership style is Wright & Paine. We were co-partners on the 22d day of May, 1858. On that day, the defendant came into our store. He was introduced by Mr. DeForest, and said he wished to sell a draft on Clark, Dodge & Co., of New York. He also said he was in business in New Orleans, and was traveling through the country partly on business and partly on pleasure, and that he was short of funds, and for that reason wished to draw his draft on New York city. I replied that we did not need any New York drafts, but that we sometimes purchased them when we did not need them.

To the introduction of all evidence relating to the purchase or sale of a draft on New York or any other place, by the defendant to the witness, or to the witness and his co-partner, under this indictment the defendant objected, because there is no averment in said indictment under or by virtue of which such evidence can be given. And the said circuit judge did decide that said evidence be admitted. To which ruling the defendant did at the time except.

And the said witness did then testify that the defendant then gave me a draft on Clark, Dodge & Co. for $250, for which I allowed him one half per cent. premium. I gave him our check upon the State Bank for $251 25-100, to which I signed our partnership name. The check was payable at sight.

*Question by the Prosecution.*—" Had the firm of Wright & Paine any money on deposite in the State Bank at the time this check was given, subject to their check ?" To the asking of which question, the defendant objected, because there is no averment in the indictment under and by virtue of which the question can be asked ; and because the question is leading, and the said circuit judge did decide that the question was a proper one. To which ruling, the defendant did at the time except. And the witness answered, " they had."

*Question by the Prosecution.*—" How much money had they on deposite in the State Bank at that time ?" To the asking of which question, the defendant objected, because there is no averment in the indictment, under which the question could be asked. And the said circuit judge did decide that the question was a proper one. To which ruling the defendant did at the time except. And the witness answered, " we had at that time to the amount of $500 at the least calculation. The check was given to him for a draft drawn by him on Clark, Dodge & Co. of New York, with whom he represented that he had money to the amount of $250.

*Question by the Prosecution.*—" Would you, or not, have given your check, at that time, to the defendant, had you not believed his representations that he had money on deposite with Clark, Dodge & Co. of New York, to the amount of $250 ?" To the asking of which question, the defendant objected, because there is no averment in the indictment, under which the question can be asked. And the said circuit judge did decide that said question might be asked. To which ruling, the defendant did except. And the defendant did answer, " I should not—most certainly." This paper now shown me (the paper is marked " A.") is the draft defendant gave me. This paper now shown me (the paper is marked " B") is the check we gave defendant. It was worth $251 25-100. Seventeen days afterwards, I enclosed the draft in a letter to our correspondent in New York for collection. It was gone ten or twelve days before we received it back again. I never received any money upon it, nor has our firm. He was arrested about two months after we got the draft. At the time of his return here, I had a conversation with him. He said he had got into rather a bad scrape, and wanted to arrange it ; that he should be able to in a short time. He said he knew he had not the money on deposite with Clark, Dodge & Co. of New York at the time he drew the draft. At one time after that, I saw him in the jail. He sent for me. He said he was tired of staying in jail ; that he could not do any thing there ; that he had a letter from his father, and that he could arrange the matter if we would take the security. He repeated the statement that he knew, at the time he drew the check, he had no money on deposit with Clark, Dodge & Co.

And the said witness being cross examined, further testified as follows: At the time Mr. DeForest introduced the defendant to me, he said that defendant wanted to sell me a check on New York. I enquired of no one as to defendant's cir

cumstances. Mr. DeForest is a man of means, as is reported. Have said to Mr. DeForest, since the draft was returned from New York, that we wanted our money. The introduction of the defendant to me by Mr. DeForest, had an influence with me in letting him have our check.

### " A."

$250.                          MADISON, Wis., May 22, 1858.

"At sight, pay to the order of Messrs. Wright & Paine two hundred and fifty dollars, value received, and charge the same to account of                    EDWIN GREENE.

To Messrs. Clark, Dodge & Co., Bankers, New York."

### " B."

$251 25-100.                          MADISON, May 22, 1858.

#### THE STATE BANK.

Pay to Edwin Green, Esq., or bearer, two hundred and fifty-one 25-100 dollars.                    WRIGHT & PAINE.

No. ———.

To the reading of which paper marked " A," in evidence the defendant objected; and the said circuit judge did decide that it might be given in evidence, and the defendant did except.

And both of said papers marked " A" and " B," were read in evidence.

*Isaac N. DeForest,* a witness for the prosecution, testified that he lived in Madison in May last, and knew the defendant. He is a cousin to my wife. I went with him into Wright & Paine's in May last. He asked me to introduce him to Mr. Paine, as he wished to sell him a draft. I introduced him to Mr. Paine. Mr. Greene made some allusion to the business. He said he wanted to raise a little money to pay his expenses. The check was not drawn at that time.

It was drawn afterwards. I said to Mr. Greene, I hope the paper you are passing to these gentlemen will be paid promptly, as they are friends of mine. He said it would be paid as sure as it went into the mail. I knew defendant some years ago. I had not seen him for five years perhaps.

*Samuel Marshall*, a witness for the prosecution, testified that he was the president of the State Bank. Wright & Paine had money on deposite at our Bank on the 22d day of May last. Our Bank was a bank doing a regular banking business under the laws of this State at this time.

*John D. Welch*, a witness for the prosecution, testified I was in the police court at the time of the defendant's examination. I arrested him at LaCrosse, and he claimed that he did not represent to Mr. Wright that he had any money on deposite. He in substance stated that he had no money on deposite at the time he sold the draft.

The prosecution then re-called George Paine, who testified : I have known the firm of Clarke, Dodge & Co., as bankers, for years. I knew them as such at the time I took the draft.

And the prosecution having rested the evidence on the part of the State, the defendant call Samuel Marshall, and propounded to him the following

*Question.*—If a man whom you never saw before, nor heard of before, were introduced to you, and he should represent that he was a wholesale grocery dealer in New Orleans, and that he had $250 on deposite with Clark, Dodge & Co. of New York city, would you give him your check upon the State Bank for $251 25-100 ?" To the asking of which question, the District Attorney objected, and the said circuit judge did decide that said question ought not to be asked. To which ruling of the said judge, the defendant excepted.

And the above and foregoing being all the evidence given on the trial of said cause, the same was submitted to the consideration of the jury, with the charge that so far as they were

concerned, the indictment was sufficiently definite in its statements. And the jury returned a verdict of guilty.

And thereupon before judgment, the defendant, by his counsel, moved the said court to arrest the judgment upon the said verdict, for the reason that the indictment is not sufficient in the law to sustain said verdict, or to charge the defendant with any crime.

And inasmuch as the circuit judge, for the reasons aforesaid, is not sufficiently advised what judgment ought to be entered upon the said motion and verdict aforesaid, therefore he does hereby respectfully ask the opinion of the honorable the supreme court of said State, upon the several questions presented to the consideration of the said circuit judge on the said trial, as is hereinbefore set forth.

So reports to the said supreme court, and asks their opinion, the said circuit judge. By the court.

L. S. DIXON, *Circuit Judge.*

*By the Court,* COLE J. This is an indictment upon section thirty-three, of chapter one hundred and thirty-four, of the revised statutes, for obtaining goods and money under false pretences. The cause was tried at the November term of the circuit court of Dane county, and the jury found the defendant guilty. A motion was made in arrest of judgment upon the ground that the indictment was not sufficient to sustain the verdict, and that it did not charge the defendant with any crime under the statute. Thereupon the circuit court stayed all proceedings under the conviction and reported the case to this court for a determination of the various questions arising upon the indictment and upon the trial. It is proper also to remark, that several exceptions were taken by the counsel for the defendant to the admission of certain testimony offered on the part of the prosecution, for the reason that there were no

averments in the indictment under which such proof could be given, and some of these exceptions will be briefly alluded to before we close our remarks.

The indictment in this case charged in substance that the defendant, on the 22d day of May, A. D. 1858, at the city of Madison, &c., knowingly, unlawfully and designedly did falsely pretend to one John Wright and George Paine, they being then and there co-partners, doing business under the name and style of Wright & Paine, that he was a wholesale grocery dealer in the city of New Orleans, and that he had money to the full amount of two hundred and fifty dollars at least, belonging to him in the hands of, and on deposit with Clark, Dodge & Co., a certain banking house in the city of New York, (which pretenses were specifically negatived to be false, to the knowledge of the defendant,) and that by color and means of these false pretenses, the defendant did then and there unlawfully and designedly and with intent to cheat and defraud Wright & Paine, obtain from them a check upon the State Bank, &c,, for the sum of two hundred and fifty-one and 25-100 dollars, the property of Wright & Paine, of the value of the amount of the check, &c.

The check which the defendant obtained from Wright & Paine, is set out *in hæc verba* in the indictment, which concludes as usual, *contra forman statuti, &c.*  This is all there is to the indictment.

It will be at once observed that all the pretenses described in the indictment and alleged to be false, are

1. That the defendant was a wholesale grocery dealer in the city of New Orleans; and 2. That he had money on deposit with Clark, Dodge & Co., in the city of New York, to the full amount of two hundred and fifty dollars.  There is no allegation that Wright & Paine relied upon these representations as being true, nor upon looking into the testimony do we think these pretenses were the operating or controlling

reasons which led them to give the defendant their draft. Now we are not prepared to say that such bold naked statements or assertions as these, unaccompanied with any artful contrivance or device calculated to deceive, however reprehensible in morals, constitute a criminal offence under the statute, especially in a case where there is no averment in the indictment that the party defrauded was induced to part with his property by relying upon the truth of the statements thus made. It is very evident that such verbal misrepresentations however ingenious and well calculated to deceive the most cautious, would not be indictable at common law or under the statute of 33 Henry, 8 ; *Rex vs. Laro*, 6 T. R., 565; *Rex vs. Beyan*, 2 Stra., 866 ; *Hartman vs. Commonwealth* 5 Barr. 60. The statutes of 30 Geo., 2 c., 24, and of 52 Geo., 3 c., 64, commonly called statutes against false pretenses, and from which the statutes of Maine, Massacusetts, New York, Pennsylvania and some of the other states, are substantially copied, were found necessary to remedy the defect in the common law, and create a new class of offences. Still it is not always easy to determine the real significance and meaning of the term "false pretenses," as used in the statutes. Does it mean any lie or false affirmation which a person may utter in the dealings of life, or in the exchange of property ? If a man says that he is a wholesale grocery dealer in a neighboring city, and has funds on deposit in another city, when it is not so, does he commit an indictable offence under our statute ? We have no disposition to restrict the language and scope of the statute, by adopting such a rigid and strict construction as takes away or measurably impairs its efficacy in protecting the honest and unsuspecting citizen against the arts, designs and falsehoods of the swindlers who prey upon society. The man who obtains the property of another by means of wilful misrepresentations and deliberate lying, deserves no especial sympathy or consideration from a court of justice. And yet it is

most obvious that there must be some limit given to the words and meaning of the statute. Section thirty-three of our statute is copied literally from the statute of Massachusetts, (R. S. Mass., § 32, ch. 126), and in the case of *Commonwealth vs. Drew.*, 19 Pick., 179, the supreme court of that State gave a definition of the term false pretenses as used in their statute, as follows. The court says, " What is a false pretense within the meaning of the statute? It may be defined to be a representation of some fact or circumstance, calculated to mislead, which is not true. To give it a criminal character there must be a *scienter* and a fraudulent intent. Although the language of the statute is very broad, and in a loose and general sense, would extend to every misrepresentation, however absurd and immaterial, or however easily detected ; yet we think the true principles of construction render some restriction indispensable to its proper application to the principles of criminal law and to the advantageous execution of the statute. We do not mean to say that it is limited to cases against which ordinary skill and diligence cannot guard; for one of its principal objects is to protect the weak and credulous from the wiles and stratagems of the artful and cunning; but there must be some limit, and it would seem to be unreasonable to extend it to those who, having the means in their own hands neglect to protect themselves."

This rule of construction or definition of the words " false pretences," may be somewhat vague and uncertain, yet it is as precise and definite as it is safe to employ when treating of the nature and ingredients of an offence which assumes a thousand different phases, and changes with the almost infinite variety of human affairs. We feel in the present case the necessity of applying some limitations or qualifications to the language of the statute and we could adopt none more cautious than the remarks just cited. The offence of obtaining money and goods under false pretences has been fully and ably dis-

cussed in the following cases, which may be usefully consulted. *Commonwealth vs. Call,* 21 Pick., 515 ; *Commonwealth vs. Strain,* 10 Met., 521 ; *Commonwealth vs. Stone,* 4 do., 43 ; *Stole vs. Mills,* 17 Me. R., 211 ; *The People vs. Stone,* 9 W. R., 182 ; *The People vs. Haynes,* 11 id., 557 ; same case in court of errors in 14 id., 547 ; *Rex. vs. Young,* 3 T. R., 98 ; *Coleman's case,* 2 East P. C., 672 ; *Rex vs. Parker,* 2 Moody C. C., 1 ; same cases, 7 C. & P., 825 ; *Regina vs. Eagleton,* 2 Bennett & Heard's Leading C. C., 88 ; *Rex vs. Flint,* R. & R. C. C., 460. We are therefore of the opinion that the bald, naked statements, set forth in the indictment, are too general and uncertain to constitute an offence under our statute. And upon looking further into the testimony of the case another difficulty presents itself to sustaining the conviction. The evidence satisfactorily shows that Wright & Paine were not induced to part with their draft chiefly upon the faith of the misrepresentations and false pretences laid in the indictment. George Paine, who was offered as a witness in support of the prosecution, testified to substantially the following facts : That the defendant was introduced to him, by Mr. De Forrest, a respectable citizen of Madison (who was well known to Mr. Paine), on the day named in the indictment, when the defendant stated that he was getting short of funds, and wished to sell a draft upon Clark, Dodge & Co., of New York City ; that after a little conversation Paine gave him the check of the firm of Wright & Paine on the State Bank, for a draft drawn by the defendant upon Clark, Dodge & Co., of New York city, for two hundred and fifty dollars, with whom he said that he had this amount of money deposited. All this testimony was objected to by the counsel for the defendant as tending to prove the obtaining of the property of Wright & Paine under circumstances entirely different from the pretences set forth in the indictment. We do not suppose there is any room for doubt as to the inadmissibility of this evidence

under the indictment. It is an elementary principle that the prosecution must prove the pretence as stated in the indictment and that any variance in substance between the pretence laid and that proved, will be fatal. Arch. C. Pl., 294, and authorities cited. It is certainly strange that the pleader did not, in the case at bar, set forth, verbatim, in the indictment, with the usual averments, the draft drawn by the defendant upon Clark, Dodge & Co., which seems to have been the real and paramount inducement or motive for Wright & Paine giving him their check upon the State Bank. It was not the pretence that the defendant was a wholesale grocery dealer in New Orleans, or that he had money on deposit with Clark, Dodge & Co., in New York, which caused them to part with their property, but the material fact that he sold them his draft upon Clark, Dodge & Co., for two hundred and fifty dollars, representing that he had funds on deposit sufficient to meet it and that it would be promptly paid when presented. His draft was the decisive inducement, the material representation, the real false pretence that caused them to part with their property, and constituting the substantive part of the offence, should have been set forth in the indictment. It is very evident that the defendant ought not to be convicted under this indictment upon such a state of facts, and we have no other course left but to set aside the conviction and discharge the defendant.