THE STATE v. COOPER *et al.*, *Appellants.*

1. Criminal Law: FALSE PRETENSES. The evidence in this case held sufficient to sustain a conviction under Revised Statutes, section 1561, for obtaining money by means of false pretenses.

2. ———: EVIDENCE. Transactions, although extending over several days, and occurring at different times, but having in view the common object of the commission of the crime, are admissible in evidence.

3. False Pretenses: RECEIVING MONEY BACK. The fact that the person from whom the money is obtained by false pretenses received it back at the time, or after the arrest of the defendant, can not affect the prosecution for the offence.

4. Criminal Practice: MISCONDUCT OF JURORS. Affidavits of jurors will not be received to show their own misconduct, nor will evidence of their declarations, made after the trial, to third persons, be received for such purpose.

*Appeal from Holt Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

The State v. Cooper.

*L. R. Knowles* and *T. H. Parrish* for appellants.

(1) The court erred in admitting as evidence statements of Gray. There was no evidence, whatever, of any conspiracy or combination between Gray and the defendant to commit the offence charged. Until the fact of the conspiracy was established, the statements of Gray were not competent evidence against the defendant, and should have been excluded. *State v. Ross*, 29 Mo. 32; *State v. Duncan*, 64 Mo. 266; *State v. Hickman*, 75 Mo. 416. (2) In any event, the statements of Gray were not competent as evidence, except when made in connection with the commission of the offence, or in furtherance of the common enterprise or purpose to commit the same. This rule the court below abrogated. 1 Greenleaf on Ev., sec. 223; *State v. Ross*, 29 Mo. 32. (3) The court erred in refusing to sustain defendant's demurrer to the evidence. The evidence offered disclosed nothing more than legitimate contracts entered into between the prosecuting witness, Lawrence, Gray, and the defendants, concerning matters about which they had the right to contract. (4) The instructions given by the court, of its own motion, were erroneous, and calculated to mislead the jury.

*B. G. Boone*, Attorney General, for the state.

(1) The indictment is founded upon section 1561, Revised Statutes, 1879. The form prescribed by said section is carefully followed, and the defendant is clearly informed of the nature and cause of the accusation against him. This is all that is required. Const. Mo., Art. 2, sec. 22; Cooley's Const. Lim. (3 Ed.) 352, note 1; *State v. Fancher*, 71 Mo. 460. (2) The instructions properly declared the law applicable to the case. *State v. Norton*, 76 Mo. 180. (3) The affidavits of third parties, as to remarks made by the juror, Soliday, tending

to impeach the verdict, were inadmissible.   Jurors will not be allowed to impeach or discredit their verdict. *State v. Fox,* 79 Mo. 109, and cases cited.   Much less, then, are affidavits of third parties, as to declarations of jurors tending to discredit or impeach the verdict, admissible. *State v. Dieckman,* 11 Mo. App. 538, affirmed by this court, 75 Mo. 570 ; *Clum v. Smith,* 5 Hill (N. Y.) 560 ; *Drummond v. Leslie,* 5 Blackf. (Ind.) 453 ; *Coker v. Hayes,* 16 Fla. 368.   It is submitted that the evidence was sufficient to support the verdict, and no errors appearing to justify a reversal, the judgment should be affirmed.

BLACK, J.—The defendants, with one Gray, were indicted under section 1561, Revised Statutes, for obtaining money from one Lawrence, by means of false pretenses, a confidence game, etc.

1.   A ground much relied upon to reverse the judgment is, that there was no evidence to support the verdict of guilty, or to justify the court in submitting the cause to the jury.   The evidence of Lawrence shows that he lived some five miles from Craig, a small village in Holt county, Missouri.   In June, 1884, Gray went to his house, saying he had a patent to sell.   What it was does not appear.   Lawrence said he had a patent gate, and that was enough for him. Gray examined the gate and declared it to be a good thing.   In a few days Gray went to Lawrence's house again, when the latter made to the former what is. called a lease, whereby Gray had the right to dispose of certain territory in Kansas.   At the request of Gray, Lawrence went to Fairfax, in Atchison county, Missouri, and put up one of these gates for exhibition.   While doing this, Thomas made his appearance several times, asked questions about the gate and the territory of Kansas, and said he would like to trade for that territory.   Lawrence told him that Gray had that territory ; Thomas inquired where Gray

was. Thereupon Lawrence went with Thomas to Gray's room, at the hotel near by. The evidence tends to show that the parties assumed to be strangers, when they were not. Gray, after some dickering, sold or assigned the lease to Thomas. Two days after this, Gray and Cooper went to Lawrence's house, when Gray stated that they had sold to Thomas too soon, for there was a man who would give fourteen hundred dollars for the Kansas territory. Cooper said he would give that amount if he could get a clear title. This could not be done without getting the lease from Thomas. Cooper said he wanted the patent and would like to work up the Kansas territory. Lawrence said he would think the matter over. In a few days Gray proposed to go in with Lawrence, each furnish half of the money, buy out Thomas and sell to Cooper for fourteen hundred dollars, and divide the money. A contract for the purchase and sale was written up by Cooper between him and Lawrence, the former keeping it, and Gray and Cooper left for Craig. In about two days Lawrence received a letter from Thomas, purporting to be written at Hamburg, Iowa, but post-marked at Fairfax, requesting an interview at Corning, a small village, on a designated day, and saying, also, that he had notified Gray to be there. The three parties met at Corning on the appointed day. After some bartering, which the evidence tends to show was a sham between Gray and Thomas, Lawrence and Gray bought back the lease from Thomas, agreeing to pay therefor six hundred dollars. Gray represented that he did not have but two hun-hundred dollars, and Lawrence was to furnish the four dred dollars. To enable Lawrence to get the money the parties agreed to meet at Craig the next day, and close the trade, as Thomas would not close up the matter until he got the money. On the next day Lawrence and Gray met at Craig, but Thomas was not there, Gray say-ing for him that he had to go up the road, but that he had left the lease at Corning, and the latter proposed to

take the money, go there and get the lease.    This Lawrence ·decided to do, and so both parties went to that place, where they found the lease with an agent, who received the four hundred dollars from Lawrence, and gave up the lease, which was then destroyed.    Lawrence then offered to deed his patent to Cooper, who declined to take it, alleging that the title papers were not recorded.

Thomas made these transactions under that name, when his true name was Bill Bond.    After the arrest, Cooper gave his name as Meyers.    The evidence leads to the conclusion that these parties knew each other well enough all the while; that they cared nothing about the Kansas territory or the patent gate, and that these arrangements were all preconceived.    Defendants offered no testimony and as the testimony stands, it can scarcely be believed that these transactions occurred in this way from honest motives.    There was ample evidence to justify the court in submitting the cause to the jury.

2.    The declarations and acts of Gray, who, it appears, escaped, were admitted only so far as they accompanied and constituted a part of these various transactions.    Although the transactions extended over several days, and were had at different places, still they had in view one common object.    Under the former rulings of this court they were clearly competent so far as they appear to have been admitted in this case.    *State v. Ross*, 29 Mo. 32; *State v. Duncan*, 64 Mo. 266; *State v. Hickman*, 75 Mo. 416.    Besides this, it does not appear that exceptions were saved to the introduction of this evidence on the trial.

3.    The court told the jury, in substance, by the first instruction given at the request of the state, that if they believed defendants and Gray combined and confederated together to cheat Lawrence out of his money, and in furtherance of that combination entered into the transactions, reciting them; that they were tricks and schemes falsely and fraudulently resorted to, to cheat

The State v. Cooper.

and swindle Lawrence, and that by means and use of them they did, acting in concert, obtain from Lawrence three hundred and fifty dollars, or any other sum, they should find defendants guilty; otherwise, they should acquit. This instruction fully and fairly, with the other as to reasonable doubt, presented the case to the jury. The fact that Lawrence got his money back after or at the time of the arrest cannot affect this prosecution.

4. Another ground for new trial was that a juror had formed and expressed an opinion of the guilt of defendants before the trial. An affidavit of Wilson was filed in support of this, in which Wilson states that he had a conversation with the juror before the trial, in which the juror said that he saw the defendants all together at Corning, the day they got the money; that he had another conversation with the same juror after the trial, in which the juror said that nine jurors were for acquittal and three for conviction; that he told the jurors what he knew and had seen at Corning, and they all "flopped" over and made a verdict of guilty; affiant believed if he had not told them what he knew about the case there were men on the jury who would have stayed there until the April term. Another witness says this juror said he had been subpœnaed as a witness in the case.

It is clearly shown by counter affidavits that the juror had not been subpœnaed in the case. There is nothing in the affidavit of Wilson, so far as relates to the conversation before the trial, to discredit or impeach the juror's competency. As to the conversation with the juror after the trial, it is sufficient to say that affidavits of jurors will not be received to show their own misconduct, nor will evidence of their declarations, made to third persons after the trial, be received for such purpose. *State v. Dieckman*, 11 Mo. App. 538, affirmed in 75 Mo. 570; *Drummond v. Leslie*, 5 Blackf. 453; *Clum v. Smith*, 5 Hill (N. Y.) 560.

We see no error in this record. The judgment is affirmed. Norton, J., absent; the other judges concur.