# THE STATE OF NORTH DAKOTA v. CHARLES F. MERRY.

(127 N. W. 83.)

**Criminal Law — False Pretenses — Sufficiency of Information.**

1. The defendant was tried, convicted, and sentenced upon an information

Note.—Although the general rule is that, on the trial of a person accused of crime, proof of a distinct, independent offense is inadmissible, there are some well-recognized exceptions to the rule, as shown by a review of the authorities in an extensive note to the famous Molineux Case, in 62 L.R.A. 193. One of these exceptions is that applied in STATE v. MERRY, to the effect that whenever intent is an essential ingredient of the crime charged, evidence of other crimes tending to establish such intent is admissible. Nevertheless, the courts are not agreed, as shown by the note cited above, as to whether, when there is other evidence of intent, evidence of other crimes may be given.

20 N. D.—22.

charging in substance that he, with intent to cheat and defraud one John G. Johns out of his property and money, did falsely pretend to the said Johns that he, the said defendant, was a duly authorized agent of the Commercial Club of Dickinson, and was authorized to solicit and collect money for immediate use in paying for the work of a preliminary survey and other necessary work of organization in connection with building a proposed railroad from Williston to Dickinson and Hettinger, and that Johns, believing said false pretenses and representations, and being deceived thereby, did then and there deliver to said defendant a check of the value of $100, etc. *Held*, that the information states facts sufficient to constitute the crime of obtaining property by false pretenses.

### Criminal Law — Intent — Proof of Other Offenses.

2. Whenever the intent or guilty knowledge of a party accused with crime is a material ingredient in the issue of the case, other acts and declarations of a similar character tending to establish such intent or knowledge are proper evidence to be admitted, provided they are not too remotely connected with the offense charged.

### Criminal Law — False Pretenses — Elements — The False Representations Part of Moving Cause.

3. It is not necessary, to constitute the offense of obtaining property by false pretenses, that the owner has been induced to part with his property solely and entirely by pretenses which are false; nor that the pretenses be the paramount cause of delivery to defendant. It is sufficient, if they are a part of the moving cause, and, without them, the defrauded party would not have parted with his property.

### Criminal Law — False Pretenses — Gist of Offense.

4. The mere fact that the money was to be used in paying the cost of a preliminary survey, and for the organization of the railroad company, would make no difference. It would not help defendant even though he used the money for these purposes. The fact that he obtained the check by false representations is the gist of the offense. The criminal character of the act is not determined by the subsequent use of the money, but by the means used in obtaining it.

### Same.

5. Under § 9246, Rev. Codes 1905, the offense is complete when the defendant, with intent to cheat or defraud another, obtains from such person any money or property. The fraud is complete when such person parts with his property.

### Appeal and Error — Leading Questions — Question First Raised on Appeal.

6. Objections on the ground that the questions were leading cannot be raised for the first time on appeal.

**Evidence.**

7. Evidence examined and held sufficient to sustain the verdict.

**Criminal Law — Fine and Imprisonment — Imprisonment for Costs.**

8. Appellant was sentenced to imprisonment in the county jail of Adams county for a period of eight months, to pay a fine of $200, and the costs of prosecution, taxed at the sum of $500, and in default of said fine and costs, to be imprisoned in the county jail of Adams county for a further period of two months. Sec. 10104, Rev. Codes 1905, provides for such a judgment. Hence no error was committed by the court in rendering such judgment.

Opinion filed May 29, 1910. Rehearing denied June 21, 1910.

Appeal from District Court, Stark county; *Hon. A. G. Burr,* J.

Action by the state of North Dakota against Charles F. Merry.

From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.

Affirmed.

*M. A. Hildreth,* for appellant.

False pretenses must not relate to future events. People v. Blanchard, 90 N. Y. 314; 5 Criminal Defenses, 366–371, and cases cited; People v. Wakely, 62 Mich. 297, 28 N. W. 871; Blum v. State, 20 Tex. App. 578, 54 Am. Rep. 530; 5 Criminal Defenses (Sup.) 1033, 1035–1038.

Knowledge of falsity of representation and intent must be shown as intent is shown in other criminal cases. 1 McClain, Crim. Law, § 691.

Other representations cannot be shown. State v. Church, 43 Conn. 471; Jackson v. People, 126 Ill. 139, 18 N. E. 286.

*Andrew Miller,* Attorney Gentral, *Alfred Zuger* and *C. L. Young,* Assistants, and *P. D. Norton,* State's Attorney, for respondent.

If a false statement of facts accompanies a false promise, the latter may be disregarded and defendant convicted on former. 19 Cyc. Law & Proc. p. 396; State v. Gordon, 56 Kan. 64, 42 Pac. 346; State v. Thaden, 43 Minn. 253, 45 N. W. 447, 43 Minn. 325, 45 N. W. 614; Pearce v. State, 115 Ala. 115, 22 So. 502; R. v. Jennison, 9 Cox, C. C. 158.

The false pretense need not have been the paramount cause of delivery; it is sufficient if it is a part. Re Snyder, 17 Kan. 542,

2 Am. Crim. Rep. 228; State v. King, 67 N. H. 219, 34 Atl. 461; People v. Herrick, 13 Wend. 87; Trogdon v. Com. 31 Gratt. 862.

Fraudulent intent may be inferred from falsity of pretense and attendant circumstances. Wharton, Crim. Law, § 1184; 4 Elliott, Ev. 2975; People v. Shulman, 80 N. Y. 373, note; Mayer v. People, 80 N. Y. 373.

All circumstances that throw any light upon the intent of accused or falsity of the representation are admissible. Underhill, Crim. Ev. § 437 and cases cited; State v. Garris, 98 N. C. 733, 4 S. E. 633; Wood v. United States, 16 Pet. 342, 10 L. ed. 987; State v. Cooper, 85 Mo. 256; Hersey v. Benedict, 15 Hun, 287; Mayer v. People, 80 N. Y. 364; State v. Briggs, 74 Kan. 377, 7 L.R.A.(N.S.) 278, 86 Pac. 447, 10 A. & E. Ann. Cas. 906.

CARMODY, J. The defendant was informed against by the state's attorney of Adams county, for the crime of obtaining property by false pretenses. The case was transferred from Adams county to Stark county, and tried before Judge Burr and a jury. The trial resulted in a conviction. A motion for a new trial was overruled, and he was sentenced to imprisonment in the county jail of Adams county for a period of eight months, to pay a fine of $200 and the costs of prosecution, taxed at the sum of $500, and in default of said fine and costs, to be imprisoned in the county jail of Adams county for a further period of two months. The defendant appeals from the judgment and from the order denying his motion for a new trial. The information charges in substance that the defendant on the 7th day of October, 1908, at the county of Adams, etc., did commit the crime of obtaining property by false pretenses, committed in the manner following, to wit:

That at said time and place the said Charles F. Merry wilfully, unlawfully, and feloniously contriving and intending, knowingly and designedly by false pretenses to cheat and defraud one John G. Johns of his property and money, did wilfully, unlawfully, feloniously, knowingly, and designedly falsely pretend to the said John G. Johns that he, the said Charles F. Merry, was a duly authorized agent and representative of the Commercial Club of Dickinson, North Dakota, and that, as said agent and representative, he was authorized to solicit and

collect money for immediate use in paying for the work of a prelimi-
nary survey and other necessary work of organization in connection
with the building of a proposed railroad extending from the town of
Williston to the towns of Dickinson and Hettinger in the state of North
Dakota, and the said John G. Johns then and there believing the said
false pretenses and representations so made as aforesaid by the said
Charles F. Merry, and being then and there deceived thereby, was then
and there induced by reason of the false pretenses and representations
so made as aforesaid to deliver and then and there did deliver to the
said Charles F. Merry, a certain check and order on the Adams county
State Bank of Hettinger, North Dakota, for $100 and payable to the
order of the said Charles F. Merry, and then and there of the value of
$100, and then and there the property of him, the said John G. Johns,
and then the said Charles F. Merry did then and there wilfully, unlaw-
fully, feloniously, knowingly, and designedly receive and obtain the said
property from the said John G. Johns by means of the said false pre-
tenses and representations aforesaid, and with intent then and there to
cheat and defraud the said John G. Johns of said property, which pre-
tenses were specifically negatived to be false, to the knowledge of the
defendant.

It will be observed that all the pretenses described in the informa-
tions, and alleged to be false, are: That the defendant represented
that he was a duly authorized agent and representative of the Com-
mercial Club of Dickinson, and that as said agent and representative
he was authorized to solicit and collect money for immediate use in
paying for the work of a preliminary survey and other necessary work
of organization, in connection with the building of a proposed rail-
road, extending from the town of Williston to the towns of Dickinson
and Hettinger, and the said John G. Johns, believing said false pre-
tenses and representations, and being deceived thereby, was then and
there induced by reason of the false pretenses and representations so
made as aforesaid to deliver, and did deliver, to the defendant a check
on the Adams County State Bank for $100 payable to the order of said
defendant.   The evidence on the part of the state, as far as material,
is substantially as follows: A. G. Newman testified that he was a resi-
dent of Hettinger, vice president of the first National Bank of that
place, first met defendant in the bank.   He was brought in there and

introduced by a man named John Midland. Said he had some proposition he wanted to talk to witness about. Wanted to sell him some railroad stock. Was pretty busy at the time and took him down to Dr. Johns, who was president of the Commercial Club. Defendant said to witness that he had represented the Dickinson Club in Chicago and New York with trust companies, that he had already made provisions to dispose of this stock, and all he wanted was to get some local men residing in Hettinger to secure about $100 apiece so as to get the incorporation papers of record, etc. John G. Johns, complaining witness, a physician, testified that defendant was brought in by Mr. Newman and introduced as a gentleman from Dickinson, who was representing the Commercial Club in the interests of a railroad that was to be built by the Commercial Club of Dickinson from Williston to Dickinson and Hettinger, and possibly later from there southwest to Deadwood and on through to the coast. Was pretty busy told defendant that he, witness, had no interest in it. Defendant said he wanted a few representative men interested, and get them to take some stock. Witness told defendant he had no money to put in a railroad; that all the money he had would not build perhaps 6 inches of a railroad. Defendant said all he wanted was to get the amount of $100 or so for one share, so as to get the good will of the people, and secure the right of way between the two towns. That he, defendant, would only give at least one or two shares to any one individual, and he only wanted to place a matter of four or five in town, and said it was necessary, under the state laws, to get a few residents to get a charter for the railroad. That he had been to New York and Chicago, and had arranged to finance the road, and the road would be built in the course of a year or such a matter. Under these representations, witness took a share of stock and gave defendant his check for $100. Defendant said it would be necessary for witness to sign the articles of incorporation. Defendant and witness went across the street, and signed the articles of incorporation before a notary public. In the course of half an hour witness learned something that opened his eyes, and his railroad stock went down. Witness also testified as follows: "Q. Did the defendant tell you that he was an agent and represented the Dickinson Commercial Club? A. Yes, sir. Q. What did the defendant state to you regarding his relations with the Dickinson Commercial Club in the

matter ol soliciting and collecting money for use in paying for the work of a preliminary survey and other necessary work of organizing in connection with the building of the railroad, if anything? (Objected to on the grounds of incompetent, irrelevant, and immaterial, leading, not within the issues of the allegations of the information. ·Overruled. Exception.)   A. He stated he was an agent or repre-.sentative of the Commercial Club of Dickinson, that he was there in the interest of that club to get money and interest the people along the line of the road. That this money was to be used in the preliminary ·survey of this road.   Q. At that time, did the defendant show you any papers or written instructions purporting to be signed by the people from Dickinson, who belonged to the Commercial Club? (Object·ed to as not within the issues of the information. Overruled. Exception.)   A. Yes, sir.   Q. You may tell the jury what papers he did ·show you.   (Same objection. Same ruling. Exception.)   A. He showed me the articles of incorporation of the railroad, and a number ·of signatures of Dickinson people.   (Defendant moves to strike out all this evidence as not responsive to the question. Overruled. Ex-·ception.   Witness further testified that the check was cashed; that it ·was of the value of $100.)   Q. Dr. Johns, when Merry told you that he was an agent or representative of the Commercial Club of Dickinson, North Dakota, and was at Hettinger in the interest of the Dickinson Commercial Club of Dickinson, North Dakota, in the matter of the promotion of a proposed railroad from Williston, North Dakota, to Dickinson, North Dakota, and to Hettinger, did you believe those representations?   (Objected to as incompetent, irrelevant, and immaterial, calling for conclusions of the witness. Overruled. Ex-·ception.)   A. Yes, sir.   Q. At the time that you gave this check and order on the Adams County State Bank of Hettinger, North Dakota, to the defendant, Charles F. Merry, for $100, did you give it to him, believing and relying upon the statement made to you at that time by him that he was the agent and representative of the Dickinson Commercial Club of Dickinson, North Dakota, and authorized to ·solicit and collect money for use in the promotion and organization of a road and the preliminary survey.   (Objected to as incompetent, irrelevant, and immaterial, calling for conclusions of the witness, and assuming matters not in proof. Overruled. Exception.)   A. Yes,

sir. Q. Dr. Johns, had you read about or had it been brought to your notice before this time that the Dickinson Commercial Club, before meeting Merry had you read in the local newspapers or had it been in anyway brought to your attention before that time that the Dickinson Commercial Club proposed to promote a railroad similar to the representations made concerning that road to you at that time by Mr. Merry? (Objected to as incompetent, irrelevant, and immaterial, and not alleged as any of the inducements to the witness to give the check and part with his property as alleged in the information. Overruled. Exception.) A. I had. The Court: I think you can show the fact that he knew about it, if he did know anything about it, but you cannot go into the details, simply to show the condition of his mind at the time, but you cannot go into the details. Q. Would you have given the defendant at that time the check for $100 on the Adams County State Bank, payable to his order, if you had not believed that he was at that time representing the Dickinson Commercial Club in the promotion of the railroad which you were led to believe the Dickinson Commercial Club was behind? (Objected to as incompetent, irrelevant, and immaterial. Not embraced within the allegations of the information. Calling for the conclusion of the witness, and on the further ground that the witness has already testified as to what were the grounds or what the inducement was to part with his property, the property described in the information, and on the further ground that it anticipates a fact to be properly found by the jury. Overruled. Exception.) A. I would not. Never met Merry before this time. Did not know anything about him. He was an absolute stranger."

On a cross-examination witness testified that he was well acquainted with Newman, that his reputation and standing with the business men in the town were good; might not have entered into negotiations with defendant if Newman had not been with him. The fact that Newman introduced the defendant to witness entered into the inducement to take part in the transaction, and it certainly had some influence in inducing witness to take stock, as Newman was a man of good standing. The sole inducement was that the defendant stated that he was a representative of the Dickinson Commercial Club. If Newman had not been with him, witness would have had grave doubts about entering into the transaction. Witness believed the enterprise was going

to be a profitable proposition, and would boom the country. He had some busineess interests down there, and thought it was going to be a good thing. He subscribed for one share of stock, and paid for it. Defendant exhibited to witness at that time articles of incorporation of the proposed road. Supposed the stock was to be delivered to witness at any time he demanded it. Witness signed the articles, and there was to be a meeting at some future time. Remembered that there was some conversation as to witness being given ten shares of common stock of the preliminary organization of the company. The check was for treasury stock, and was to be used for the preliminary survey, and the incorporation of the railway company. The common stock was to be given after this. On redirect-examination witness testified as follows: "Q. Dr. Johns, the check for $100, the property that you gave the defendant at Hettinger on the 7th of October, 1908, was that given to be used in the organization and the necessary work incident to starting a railroad to be promoted by the Dickinson Commercial Club? (Objected to as already testified to. Overruled. Exception.) A. Yes. Q. Did you at that time intend or contemplate buying stock in any railroad other than a railroad that might be promoted by the Dickinson Commercial Club? (Objected to as incompetent, irrelevant, and immaterial. Leading.) A. No. Q. Would you at that time have purchased any stock or paid out or given any check or property to promoting any other railroad than the one to be promoted by the Dickinson Commercial Club at Dickinson, North Dakota, as represented to you by the defendant, Merry? (Objected to as incompetent, irrelevant, and immaterial, calling for conclusion of the witness, not proper redirect examination. Overruled. Exception.) A. No. Q. Then did I understand you that this property was given to Merry solely for the purpose of being put into the organization and the promotion of a railway to be promoted by the Dickinson Commercial Club, and none other? (Same objection, same ruling, exception.) A. Yes. Q. You stated that Mr. Newman introduced Merry to you as a member of or representative of the Dickinson Commercial Club, did that introduction on the part of Mr. Newman cause you to more readily believe the representations made to you by Mr. Merry? A. Yes, sir."

On recross-examination witness testified that he was not acquaint-

ed in Dickinson, and knew nothing of the *personnel* of the Commercial Club, only knew that there was a Commercial Club in town. Took it for granted that there was such a club in Dickinson, knew nothing of its membership. Did not know whether there was one or more.

. . L. M. Anderson, assistant cashier of the Adams County State Bank, testified as to cashing the check.

W. R. Everett testified that he was secretary of the Dickinson Commercial Club, knew the defendant; that the records of the proceedings of the Dickinson Commercial Club did not show that the defendant was at any time employed as agent and representative of the Dickinson Commercial Club, to solicit funds and collect money for the organization of the proposed railroad or authorized to act for the club. On cross-examination he testified that he did not attend all the meetings, there was some discussion at some of the meetings in regard to promoting and organizing a railroad running south from Dickinson. It was discussed at more than one meeting. Did not know whether the minutes showed all the discussions in regard to the railroad at the club.

John Vanderlass testified that he was president of the Dickinson Commercial Club from the fore part of May, 1908, to the fore part of May, 1909. That defendant was not employed or authorized on October 7, 1908, to act as agent and representative of the club, to solicit funds and collect money in connection with said proposed railroad. On cross-examination he testified that there were many matters discussed at the club of which no record was made.

F. A. Finch testified that he met defendant October 8, 1909, at Lemmon, South Dakota. That defendant represented that he was organizing a railroad from Williston to Dickinson and Hettinger, and wanted a few local stockholders on South Dakota, two or three, and would like to get them from Lemmon. That they needed two or three local men to help complete the organization in South Dakota territory. That the road would be built from Rapid City north through Dickinson and to Williston, and then probably a branch line from Dickinson to either Hettinger or Lemmon. In all probability to Lemmon. He presented witness with a document or paper, if witness remembered rightly, that had the commercial club heading of the Dick-

inson Commercial Club. Witness believed it was signed by an officer of the Dickinson Commercial Club, at least defendant represented that he came from the Dickinson Commercial Club. Witness thought it no more than right and proper that he should introduce defendant to some business men, and he, witness, took defendant out and introduced him to Payne, and he represented the same proposition to Payne, and Payne did not care for any investments of that kind, and as witness and defendant went back to the bank they met Ed. Delehan. Witness introduced defendant to Delehan, and left them talking. This was just before dinner. During the noon hour Delehan, Lemmon, and witness were talking the proposition over. After dinner defendant came in. Witness did not remember whether they carried on any conversation in the presence of defendant or not; at least defendant came in with his checks. He got a check from Lemmon and Delehan.

E. C. Barry testified that he knew defendant for a number of years. That defendant requested him not to say anything about defendant, and he would see him later. Defendant told witness that he, defendant, was agent and representative of the Dickinson Commercial Club, authorized to solicit and collect funds in the matter of the promotion of a railroad. Witness Newman, recalled, testified that later in the day of October 7, defendant tried to sell Newman some railroad stock. Witness Newman told defendant he did not know him, did not know what was back of the railroad, and did not want to put his money in until he knew what he was doing.

Elmer Tew testified that he was sheriff of Adams county, that defendant escaped from the jail. On cross-examination, however, he admitted that bail had been accepted by the justice, and an order given to witness to discharge defendant, but he, witness, did not discharge him.

Arthur J. Hancock testified that after Newman introduced defendant to Dr. Johns, he, defendant, told Dr. Johns that he, defendant, was a representative and agent of the Commercial Club of Dickinson, and had a railroad proposition to make to him, and Dr. Johns asked him if that was a joke or was it on the square. Defendant said it was on the square. On a cross-examination witness testified that he heard

the defendant tell that he wanted to sell shares at $100 a share, for the preliminary survey or something of that kind.

A. G. Brown, the magistrate before whom defendant had his preliminary examination, testified that the defendant was in a normal condition of mind, and talked freely and willingly at the examination. Said he was an agent and representative of the Dickinson Commercial Club on October 7, 1908. All the testimony of the witness Brown was objected to as incompetent, irrelevant, and immaterial, and inadmissible under the allegations of the information, and that the witness had not shown himself competent to testify as to the mental status and physical appearance.

P. D. Norton, state's attorney, testified that he had a talk with defendant a day or two before the preliminary examination, and defendant told him, Norton, that he need not bring any of the officers of the Commercial Club of Dickinson as witnesses, as he, defendant, would admit that he was not agent or representative of the Dickinson Commercial Club at any time, and did not claim to be. This evidence was admitted over the objection of the defendant. The evidence of Finch was admitted over the objection of the defendant.

John Rissback testified on the part of the defendant that he was county treasurer of Stark county, signed the articles of incorporation, and was associated with the defendant in the organizing of the company. Was a member of the Dickinson Commercial Club at that time. Articles of incorporation, signed by defendant, John G. Johns, and five others, admitted in evidence, are recorded in the office of the secretary of state of the state of South Dakota.

Defendant assigns numerous errors, which he has grouped under four general classes:

1. Errors relating to the sufficiency of the proof to sustain the allegations of the information;

2. Errors relating to the admission of proof to sustain the allegations of the information;

3. Errors in the information; and

4. Errors in the charge.

To constitute the offense described in the Code and set forth in this

information, four things must concur, and four distinct averments must be proved:

1. There must be an intent to defraud;

2. There must be an actual fraud committed;

3. False pretenses must be used for the purpose of perpetrating the fraud; and

4. The fraud must be accomplished by means of the false pretenses made use of for the purpose, *viz.,* they must be the cause which induced the owner to part with his property; that is, that the false pretenses, either with or without the co-operation of other causes, had a decisive influence upon the mind of the owner, so that, without their weight, he would not have parted with his property. Com. v. Drew, 19 Pick. 179; People v. Haynes, 11 Wend. 557; Re Snyder, 17 Kan. 542, 2 Am. Crim. Rep. 228; State v. King, 67 N. H. 219, 34 Atl. 461; People v. Herrick, 13 Wend. 87.

The defendant strenuously contends that there is no evidence of a fraudulent intent on the part of the defendant, no evidence that he did not know that he was not authorized to solicit subscriptions, and no evidence that Dr. Johns, the complaining witness, was in fact defrauded out of his money, no evidence that Dr. Johns, parted with his property or money upon any false pretenses. If the defendant is correct in his contentions then the judgment should be reversed. The question of intent is always one for the jury under proper instructions of the court. The jury may infer the intent from all the facts in the case. An intent on the part of the defendant to defraud is an essential element, sometimes said to be the gist of the offense, and the burden is upon the state to establish it beyond a reasonable doubt. As a general rule, all the relevant circumstances at the time of, and accompanying or surrounding the transaction in question, are proper to be shown in evidence. It is generally held that the fraudulent intent of the defendant may be inferred from the falsity of the pretenses and the attending circumstances. Elliott, Ev. § 2975; Mayer v. People, 80 N. Y. 364; People v. Herrick, 13 Wend. 87; People v. Baker, 96 N. Y. 340; Trogdon v. Com. 31 Gratt. 862.

Before a person can be convicted under our Code as to false pretenses, it must be proved that he intended to cheat or defraud; that he made the false pretenses designedly to obtain property and that he

did obtain property by means of such pretenses, so made, and all evidence, legitimately tending to prove these matters is competent. The intent, motive, and knowledge of the defendant are proper subjects of investigation, and they may be found by evidence of all the circumstances attending the criminal transaction or by the declarations and conduct of the defendant, both before and after. People v. Everhardt,. 104 N. Y. 595, 11 N. E. 62.

In Wharton's American Criminal Law, 6th ed. 649, it is said: "Where the *scienter* or *quo animo* is requisite to, and constitutes a necessary and essential part of the crime with which the person is charged, and proof of such guilty knowledge or malicious intention is indispensable to establish his guilt in regard to the transaction in question, testimony of such acts, conduct, or declarations of the accused as tend to establish such knowledge or intent is competent, notwithstanding they may constitute in law a distinct crime."

3 Greenleaf on Evidence, § 15, has the following: "In the proof of intention it is not always necessary that the evidence should apply directly to the particular act with the commission of which the party is charged, for the unlawful intent in the particular case may well be inferred from a similar intent proved to have existed in other transactions done before or after that time."

In Stephen's Digest of Evidence, May's ed. p. 56, the rule is laid down as follows: "When there is a question whether a person said or did something, the fact that he said or did something of the same sort on a different occasion may be proved, if it shows the existence on the occasion in question of any intention, knowledge, good or bad faith, malice, or other state of mind, or of any state of body or bodily feeling, the existence of which is an issue or is deemed to be relevant to the issue."

See also 1 Greenl. Ev. § 53, and notes.

In Weyman's Case, 4 Hun, 511, Judge Daniels lays down the rule as follows: "Where goods have been obtained by means of fraudulent representations, it has been held that as the intent is a fact to be arrived at, it is competent to show that the party accused was engaged in other similar frauds about the same time; provided that the transactions are so connected as to time, and so similar in their other rela-

tions, that the same motive may reasonably be imputed to them all." See Elliott, Ev. § 2976, and cases cited; State v. Cooper, 85 Mo. 256.

The crime of false pretense is not made out by simply showing that the representations charged in the indictment were made, and that they were false, and that the defendant knew them to be false. The jury, from these facts and from all other facts, may infer the fraudulent intent; but the law does not presume the fraudulent intent; that is to be found as a fact by the jury, and is not an inference of law.

Trogdon v. Com. 31 Gratt. 862, contains a very full discussion of the reasons for the admission of evidence of other offenses of the same character as the one on trial, and says: "Now, upon a prosecution for obtaining goods by false pretenses, the indictment must aver the fraudulent intent, and the commonwealth must prove it. It is the very gist of the offense. . . . It is not sufficient that the accused knowingly states what is false. It must be shown his intent was to defraud. Such intent is not a presumption of law, but a matter of fact for the jury. Being a secret operation of the mind, it can only be ascertained by the acts and representations of the party. A single act or representation in many cases would not be decisive, especially where the accused has sustained a previous good character. But when it is shown that he made similar representations about the same time to other persons, and by means of such representations obtained goods, all of which were false, the presumption is greatly strengthened that he intended to defraud."

We think under the foregoing authorities the evidence of Finch, Barry, and Newman was properly admissible as to the intent of the defendant, and the question of defendant's intent under the evidence, were properly submitted to the jury. Evidence that defendant was not the agent or representative of the Dickinson Commercial Club, and was not authorized to solicit subscriptions for the preliminary survey and organization of the railroad, was introduced on the part of the state, and the question was submitted to the jury under proper instructions. The evidence of Brown and Norton was properly admitted as admissions by the defendant. The more serious question is: Did the alleged false pretenses have so material an effect in inducing the prosecutor to part with his property that without their influence upon his mind he would not have parted with it? The evi-

dence shows that the Dakota Southern Railway Company was incorporated under the laws of the state of South Dakota with an authorized capital of $90,000,000 divided into 900,000 shares of a par value of $100 each, $70,000,000 or 700,000 shares to be preferred stock, and $20,000,000 or 200,000 shares to be common stock. All stock to be issued in such an amount and at such time or times and paid in such manner and in such amounts as the board of directors might designate. The board of directors had authority to issue the stock of the company in payment of property or for compensation for services rendered the company. The articles of incorporation were signed by the complaining witness, Dr. Johns, and he was to receive for his $100 check, one share of treasury stock and expected to be given ten shares of common stock of the preliminary organization of the company. The common stock he expected to receive later.

As to the treasury stock he testified as follows:

Q. When was this stock to be delivered to you?

A. Well, it was supposed to be delivered at any time I suppose it was demanded; I signed the articles and there was to be a meeting at some time, at some further date, as really I did not invest so very strong.

It is plain to be seen that if he gave defendant the $100 check in payment for the stock, and that the alleged false representations that defendant was a representative of the Dickinson Commercial Club, and as such representative was authorized to solicit subscriptions, etc., was not the moving cause, and that he would have given the check without those representations, then the appellant cannot be convicted.

In State v. Green, 7 Wis. 676, cited by defendant, Green was indicted for defrauding Wright & Paine out of a check for the sum of $251.25. He was introduced to Mr. Wright in Madison, Wisconsin, by a man named DeForest, who was a man of standing in the community. Green stated that he was a wholesale grocery dealer in New Orleans; that he was traveling about the country partly for pleasure and partly on business, and that he was short of funds and wished to draw his draft on Clark, Dodge, & Company, bankers in New York city, for $250, and that he had money with Clark, Dodge, & Company sufficient to pay the $250. He drew the draft on Clark, Dodge, &

Company for $250, on which Wright & Paine allowed him ½ per cent premium, and gave him a check for $251.25. There were no allegations in the indictment that Wright & Paine relied upon the false representations of Green. Paine testified that he would not have given the check to Green had he not believed his representations that Green had money on deposit with Clark, Dodge, & Company, of New York, to the amount of $250. The court says: "The evidence satisfactorily shows that Wright & Paine were not induced to part with their draft chiefly upon the faith of the misrepresentations and false pretenses laid in the indictment." As hereinbefore stated, in this case there was no allegation in the indictment that Wright & Paine relied upon the false representations of Green, while in the case at bar the information alleges that Johns relied upon the false representations of appellant. The court instructed the jury on the question of what induced Johns to part with the check as follows: "Even if the defendant made such a statement to Dr. Johns, but Dr. Johns gave this check for $100 for some other reason, and this representation was not the effective cause and the material cause for giving up the check, then you must find for the defendant, as the state would not have shown that the property was obtained by means of this, but it is not necessary that this should have been the only thought in the mind of Dr. Johns. The mere fact that he may have thought the project would have been a benefit to the community, or that he might obtain some pecuniary benefit himself in the future, would not relieve the defendant from the effect of a false representation, provided that the false representation was the inducing cause. It is sufficient, however, if it had a material influence in inducing the owner to part with his property, although he was also influenced in part by other causes and representations." Appellant excepted to this, but did not request any different instruction.

In State v. Dexter, 115 Iowa, 678, 87 N. W. 417, the court says: "It may be, as suggested by appellant, that Brown & Son did not rely solely on the representations concerning the ownership of the stock. Other matters may have been taken into consideration. It was sufficient, however, if it appeared that but for such representations the sale would not have been made." See also 19 Cyc. Law & Proc. p. 407, and cases cited.

20 N. D.—23.

These instructions were not prejudicial. It is not necessary, to constitute the offense of obtaining goods by false pretenses, that the owner has been induced to part with his property solely and entirely by pretenses which are false; nor that the pretenses be the paramount cause of delivery to defendant. It is sufficient, if they are a part of the moving cause, and, without them, the defrauded party would not have parted with his property. Re Snyder, 17 Kan. 542, 2 Am. Crim. Rep. 228.

In the case at bar Dr. Johns testified that he believed the representations made by the defendant that he was a duly authorized agent and representative of the Commercial Club of Dickinson, and that as said agent and representative he was authorized to solicit and collect money, etc., and that he gave defendant the check in question, because of these representations, and would not have given it to him but for these representations. It is true that this testimony was given by Johns in answer to several leading questions, asked him by the state's attorney. None of these questions were objected to on the ground that they were leading, and appellant cannot raise this question for the first time in this court.

It is claimed by appellant's counsel that it was not sufficiently shown by the evidence offered by the state, that the prosecuting witness, Dr. Johns, was in fact defrauded. That the evidence does not show that he suffered any loss of property when he accepted, in payment of the check, stock in the proposed railroad. It is true that there is no evidence of the value of the stock. Neither is there any evidence that Johns could not have received the stock if he demanded it. In fact he testified that he supposed the treasury stock was to be delivered any time he demanded it, and that he was to receive ten shares of common stock later.

Under § 9246, Rev. Codes 1905, the offense is complete when the defendant, with intent to cheat or defraud another, obtains from such person any money or property.

The fraud is complete when such person parts with his property. Wharton, Crim. Law, 9th ed. § 1200; Com. v. Mason, 105 Mass. 163, 7 Am. Rep. 507; Com. v. Coe, 115 Mass. 481; Com. v. Wilgus, 4 Pick. 178; State v. Jamison, 74 Iowa, 613, 38 N. W. 509; People v. Haynes, 11 Wend. 557; People v. Ward, 145 Cal. 736, 79 Pac. 448;

19 Cyc. Law & Proc. p. 411, and cases cited; People v. Cook, 41 Hun, 67.

Wharton, § 1200, supra, says: "When the goods have been obtained, only an intent to defraud need be proved, and not an actual defrauding; and hence it is not necessary to charge loss or damage to the prosecutor, the offense being complete when the goods are obtained by false pretenses, with intent to cheat and defraud."

People v. Wakely, 62 Mich. 297, 28 N. W. 871, relied upon by the appellant, is not in point. In that case the charge was that the defendant, Hudson J. Wakely, with intent to cheat and defraud one Margeret J. Schild, and fraudulently obtain from her one buggy, represented that he owned in fee simple, clear and free from all liens, 120 acres of good farming land, worth $6,000, and represented that his brother, John Q. Wakely, owned 160 acres of land, free and clear of all liens, and was worth at least $25,000, and that said representations were made to induce said Margeret Schild to take the promissory note for $150 of the two Wakelys in payment for said buggy. The testimony showed that the defendant owned the land, and that it was worth $6,000. The testimony did not show what John Q. Wakely was worth. No attempt had been made to collect the note. The court held that no actual fraud was shown, and that the defendant could not be convicted, as no person was defrauded.

Defendant contends that the essence of the crime of obtaining money or property by false pretenses is that the false pretenses should be of a past event, or of a fact having a present existence, and not of something to happen in the future. This is unquestionably good law, but does not apply to the facts in the case at bar. The offense—the false pretenses charged in the case at bar—is that the defendant represented himself as the agent and representative of the Dickinson Commercial Club, and as such agent and representative he was authorized to collect money, etc. The mere fact that it was to be used in paying the cost of a preliminary survey, and for the organization of the railroad company, would make no difference. It would not help defendant even though he used the money to pay the cost of the preliminary survey, and the organization of the company. The fact that he obtained the check by false representations is the gist of the offense.

In People v. Lennox, 106 Mich. 625, 64 N. W. 488, in the second

paragraph of the syllabus, the court says: "The fact that money obtained by false pretenses is devoted to the object for which it was given, which is a meritorious one, will not constitute a defense to a criminal prosecution, such fact being immaterial upon the question of intent to defraud." In this case the defendant was soliciting money to establish a school. He represented to the prosecutor that another person had subscribed $10, when, as a matter of fact, he had only subscribed $1. The court says: "The proofs fully sustain the charge, and conclusively show that the respondent represented to Shank that Newton had subscribed and paid $10, whereas in fact he had subscribed and paid but $1. It is, however, insisted that no criminal intent necessary to the offense is shown, because the respondent used the money obtained for the purpose of establishing the school, and had purchased articles necessary to start it. What he did with the money is immaterial. The law does not sanction the obtaining of money under false pretenses, though the object to which it is devoted be meritorious. The criminal character of the act is not determined by the subsequent use of the money, but by the means used in obtaining it." See also 19 Cyc. Law & Proc. p. 396, and cases cited; State v. Gordon, 56 Kan. 64, 42 Pac. 346; State v. Thaden, 43 Minn. 325, 45 N. W. 614; Pearce v. State, 115 Ala. 115, 22 So. 502.

The witness Barry, hereinbefore mentioned, who was sheriff of Adams county at the time of the arrest of defendant, testified to an alleged attempt of defendant to escape. This testimony, and the testimony of the witness Tew, was objected to by the defendant, and the objection overruled. This evidence was properly admitted. Elliott, Ev. 4th ed. § 2724.

The evidence of the witness Hancock was properly admitted. He testified he overheard the conversation between Dr. Johns and the defendant, and his testimony tended to corroborate the evidence of Dr. Johns.

From what we have hereinbefore stated, it follows that the court did not err in denying the motion made by the defendant at the close of the state's case, to advise the jury to return a verdict for defendant. Sec. 10104, Rev. Codes 1905, provides a judgment that the defendant pay a fine and costs, may also direct that he be imprisoned until both the fine and costs are satisfied, specifying the extent of the im-

prisonment, which must not exceed one day for every $2 of the fine and costs. Hence, the court did not err in adjudging that defendant, in default of said fine and costs, be imprisoned in the county jail of Adams county for a period of two months. The record shows that the costs of prosecution were taxed at the sum of $500. Hence it is presumed that they were properly taxed.

Finding no prejudicial error in the record, the judgment and order appealed from are affirmed. All concur.