STATE of North Dakota, Plaintiff
and Respondent,

v.

Percy PERSONS, Defendant
and Appellant.

Cr. No. 424.

Supreme Court of North Dakota.

Nov. 1, 1972.

Lanier, Knox & Olson, Fargo, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Lester J. Schirado, State's Atty., Morton County, Mandan, for plaintiff and respondent.

PAULSON, Judge.

On August 2, 1971, a criminal complaint was filed with the Honorable William F. Hodny, Judge of the Morton County Court of Increased Jurisdiction, charging the defendant, Percy Persons, with obtaining money by false pretenses in contravention of § 12–38–04 of the North Dakota Century Code. A warrant was then issued and Persons was arrested and brought before the county court on August 13, 1971. A preliminary examination was held on September 15, 1971, after which examination Persons was bound over to the district court for trial.

Thereafter Persons made application to the district court for a writ of certiorari. The writ was granted on September 24, 1971, and the county judge was ordered to certify the record of the proceedings in the county court to the district court. A hearing was held on October 5, 1971. After hearing the argument of counsel for both parties, the writ of certiorari was quashed, vacated and set aside, and Persons was bound over to the district court on the charge of obtaining money by false pretenses. Persons has appealed from the order vacating the writ of certiorari.

■ The right to a preliminary hearing is derived solely from statute and hence it necessarily follows that such right is dependent upon and limited by the statutory provisions relative thereto. State v. Rudolph, 193 N.W.2d 237 (N.D.1971); State v. Hart, 30 N.D. 368, 152 N.W. 672 (1915). Thus, in a proceeding on a writ of certiorari (§ 32–33–09, N.D.C.C.), the district court's review of the action of the county court was limited to a determination of whether the county court, in holding Persons for trial, properly followed the statutory guidelines for preliminary hearings in criminal matters set out in §§ 29–07–18 and 29–07–20, N.D.C.C. See § 32–33–09, N.D.C.C.; Green v. Whipple, 89 N.W.2d 881 (N.D.1958).

Section 29–07–18, N.D.C.C., provides, in pertinent part:

"*Procedure—Accused discharged.*—After hearing the evidence on behalf of the respective parties, in a preliminary examination, if it appears either that a public offense has not been committed, or that there is not sufficient cause to believe the defendant guilty thereof, the magistrate shall order the defendant to be discharged. . . ."

Section 29–07–20, N.D.C.C., provides:

"*Accused held to answer.*—If it appears from a preliminary examination that a public offense has been commit-ted, and that there is sufficient cause to believe the defendant guilty thereof, the magistrate shall hold him to answer."

■ The power of a magistrate to bind a defendant over to the district court for trial is dependent upon two factors: first, that it appears that a public offense has been committed; and, second, that it appears that there is sufficient cause to believe the defendant guilty of such offense. §§ 29–07–18 and 29–07–20, N.D.C.C.; Green v. Whipple, *supra*. Thus, our review in this case is limited to a determination of whether or not these two requirements were met in the proceedings in the county court.

The record of the preliminary examination indicates that if the offense of obtaining money by false pretenses was committed it necessarily must have been committed by the defendant, Persons, since the criminal conduct complained of was that of Persons and no one else. Therefore, the only issue presented by this case is whether or not the county judge, by finding that the offense of obtaining money by false pretenses appeared to have been committed, exceeded his authority to bind Persons over for trial.

■ The language of § 29–07–20, N.D.C.C., that is: "If it appears . . . that a public offense has been committed" was discussed by this court in Green v. Whipple, *supra* 89 N.W.2d at 883:

"The word 'appear' is the key to the first requirement for holding the defendant to answer. Counsel for the defendant argues that the prosecution must make out a prima facie case in this respect, that it must 'show' that a public offense has been committed. We do not believe that the word 'appear' places such a heavy burden upon the prosecution. The most general synonym for 'appear' is 'seem'. Webster's New International Dictionary, Second Edition. Or it may mean 'seem likely'. Funk &

Wagnalls New Standard Dictionary. We do not construe our statutes to require that at a preliminary hearing the commission of a public offense be established with absolute certainty or beyond a reasonable doubt. In order to vest jurisdiction in the magistrate insofar as that phase of the hearing is concerned a probability is sufficient."

We adopt this reasoning in the case at bar.

█ In order to constitute the offense of obtaining money by false pretenses, as that offense is set out in § 12–38–04, N.D.C.C., four things should be shown: (1) there must be an intent to defraud; (2) there must be an actual fraud committed; (3) false pretenses must be used for the purpose of perpetrating the fraud; and, (4) the false pretenses must be the cause which induced the owner to part with his property, that is, that the false pretenses, either with or without the cooperation of other causes, had a decisive influence upon the mind of the owner, so that without their weight he would not have parted with his property. State v. Merry, 20 N.D. 337, 127 N.W. 83 (1910).

█ The intent to defraud may be shown from all the relevant circumstances surrounding the transaction in question. State v. Merry, *supra*. Thus, an intent to defraud may be inferred from the testimony of Mary Payne and the exhibits adduced at the preliminary examination which show: that Persons, asserting that he was an insurance agent, contacted Anna Payne and Mary Payne to sell them insurance; that Persons filled out checks totaling $4,000 ($2,000 from each of the Paynes), payable to his order, which Anna Payne and Mary Payne signed as payment for the premiums for such insurance; that Persons had Anna and Mary Payne sign handwritten papers which he retained and which he said were part of the transaction for sale of the insurance, the true contents of which papers they were not aware of; that Persons stated that he could obtain re-funds of the money paid for such insurance if he were given the canceled premium checks which were payable to and endorsed by him; that Persons took from Anna Payne and Mary Payne these canceled checks which he had received as payment for the insurance which he represented he was selling to them and never returned such checks; that Persons requested and received checks in the sum of $250 each from Anna Payne and Mary Payne for obtaining the refunds; and, finally, that none of the insurance which he represented that he was selling to Anna and Mary Payne, nor any refunds of the premiums, were ever received by them.

█ Notwithstanding this evidence from which an intent to defraud can be inferred, Persons contends that such an inference is erroneous because of the existence of three handwritten promissory notes which were retained by Persons and which indicate that he had promised to pay, at various times in 1972, amounts which equal the total amount of all of the checks given to him by Anna Payne and Mary Payne. Thus he contends that these notes, which were introduced in evidence at the preliminary examination, preclude any inference other than that Persons was only borrowing money legitimately from Anna and Mary Payne. However, we do not believe, in light of the total circumstances surrounding the dealings between Persons and Anna and Mary Payne, that the handwritten promissory notes retained by Persons (the maker) are conclusive evidence of the absence of any intent to defraud.

█ Persons further contends that since the promissory notes *did not become due until various dates after the commencement of the criminal proceedings in the county court,* no actual fraud had been committed by him. However, we do not find this contention persuasive. Under § 12–38–04, N.D.C.C., an actual fraud is committed and complete when the defendant with an intent to defraud another ob-

tains from such person any money or property. The fraud is complete when such person parts with his property. State v. Merry, *supra*. In the instant case, the actual fraud could be inferred from the testimony and exhibits adduced at the preliminary examination which indicate that Anna and Mary Payne gave checks to Persons as a result of actions by Persons which, as discussed previously, indicate an intent to defraud Anna and Mary Payne, and that Persons cashed these checks.

The fact that false pretenses were used to perpetrate the fraud can be inferred from the testimony of Mary Payne to the effect that she never received any insurance policies, or any refunds, from Persons. Thus it can be inferred from this testimony that Persons' representations to the effect that Anna Payne's and Mary Payne's checks were for payment of insurance premiums and for subsequent refunds of those premiums were false when made.

The fact that false pretenses were the cause which induced Anna and Mary Payne to part with their money can be inferred from Mary Payne's testimony to the effect that she and Anna Payne thought that they were purchasing insurance and paying Persons a fee for obtaining refunds of premiums already paid when they gave the various checks to Persons.

Thus we find on the basis of the record of the preliminary examination that the county judge did not fail to follow the statutory guidelines set out in §§ 29–07–18 and 29–07–20, N.D.C.C., when he found that it appeared that the crime of obtaining money by false pretenses had been committed and that there was sufficient cause to believe that Persons was guilty thereof.

The order of the district court is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.