STATE of North Dakota, Plaintiff and Appellee,

v.

Timothy MORRISSEY, Defendant and Appellant.

Cr. No. 712.

Supreme Court of North Dakota.

June 20, 1980.

See also, N.D., 295 N.W.2d 305.

William G. Goetz, State's Atty., Hettinger, for plaintiff and appellee.

Greenwood, Greenwood & Greenwood, P. C., Dickinson, for defendant and appellant; argued by Mark L. Greenwood, Dickinson.

PAULSON, Justice.

Timothy Morrissey appeals from an order of the Adams County District Court denying his writ of certiorari. We affirm the order denying writ of certiorari and affirm the decision that probable cause existed to bind Morrissey over for trial.

On November 20, 1979, Morrissey was charged with the crime of murder pursuant to § 12.1–16–01 of the North Dakota Century Code, a class AA felony. The complaint charged that Morrissey did "intentionally cause the death of Val Scott Blade". Two other persons were also charged with the murder of Val Blade, one Reginald Trieb and the other a minor whose initials are R. H.

A preliminary hearing was held before the county justice of Adams County. The county justice found that probable cause existed and bound Morrissey and Trieb over for trial. Morrissey petitioned the Adams County District Court for a writ of certiorari claiming that the county justice had exceeded his jurisdiction in making a finding of probable cause. This writ of certiorari was quashed by the Adams County District Court on January 4, 1980, and Morrissey has appealed from the order quashing his writ of certiorari.

■ We must first determine whether or not North Dakota statutory law provides for an appeal from an order denying a writ of certiorari. We find that it does. The North Dakota statutory scheme relating to writs of certiorari, mandamus, and prohibition dates back to territorial days. Most of the pertinent statutes were enacted in 1877 and have survived to the present day without amendment. *See* Chapter 32–32 through 32–35, N.D.C.C.; and *Waltman v. Austin*, 142 N.W.2d 517, 523 (N.D.1966). Recently this court has experienced an increasing use among North Dakota practitioners of these somewhat antiquated and dust-laden procedural devices. It may well be time for the Legislature to take a long and searching look at these devices to determine how they fit into modern legal practices.

A writ of certiorari is a "special proceeding" as that term is defined in § 32–32–01, N.D.C.C., which provides as follows:

"*32–32–01. Definition.*—'Special proceedings' within the meaning of this chapter shall include the writs of certiorari, mandamus, and prohibition."

"Special proceedings" are civil, not criminal, actions. Pursuant to § 28–27–01, N.D.C.C., a judgment in a special proceeding in any of the district courts may be removed to the Supreme Court by appeal. Section 28–27–01, N.D.C.C., provides as follows:

"*28–27–01. Appeals to supreme court.* —A judgment or order in a civil action or in a special proceeding in any of the district courts may be removed to the supreme court by appeal as provided in this chapter."

Section 28–27–02(2), N.D.C.C., provides that "A final order affecting a substantial right made in special proceedings" may be "carried to the supreme court". A judgment in a special proceeding is defined in § 32–32–03, N.D.C.C., as follows:

"*32–32–03. 'Judgment in special proceeding' defined—Motion and order.*—A judgment in a special proceeding is the final determination of the rights of the parties therein. The definitions of a motion and an order in a civil action are applicable to similar acts in a special proceeding."

Because we find that the order denying Morrissey's writ of certiorari was a final determination of his rights in a special proceeding, we conclude that his appeal is properly before this court.

We have found two previous North Dakota cases in which an appeal was permitted

from an order denying a writ of certiorari when certiorari was sought after a determination was made in a preliminary hearing to bind a defendant over for trial. *State v. Persons,* 201 N.W.2d 895 (N.D.1972); *Green v. Whipple,* 89 N.W.2d 881 (N.D.1958).

In *Persons, supra* 201 N.W.2d at 897, we said that

". . . in a proceeding on a writ of certiorari . . . the district court's review of the action of the county court was limited to a determination of whether the county court, in holding Persons for trial, properly followed the statutory guidelines for preliminary hearings in criminal matters . . . ."

*Persons* was decided in 1972 and since that time we have adopted the North Dakota Rules of Criminal Procedure which became effective on November 1, 1973. Rule 59(a), N.D.R.Crim.P. Preliminary examinations are now governed by Rule 5.1, N.D.R. Crim.P. In pertinent part, Rule 5.1, N.D.R. Crim.P., provides as follows:

"RULE 5.1—PRELIMINARY EXAMINATION

"(a) *Probable cause finding.* If it appears from the evidence that there is probable cause to believe that an offense has been committed and that the defendant committed it, the magistrate shall forthwith hold him to answer in a trial court of the county having jurisdiction of the offense. The defendant may cross-examine witnesses testifying against him and may introduce evidence in his own behalf. . . .

"(b) *Discharge of the defendant.* After hearing the evidence on behalf of the respective parties, in a preliminary examination, if it appears either that a public offense has not been committed, or that there is not sufficient cause to believe the defendant guilty thereof, the magistrate shall order the defendant to be discharged. . . ."

Rule 5.1, N.D.R.Crim.P., has superseded §§ 29–07–18 and 29–07–20, N.D.C.C., which were at issue in *Persons, supra* 201 N.W.2d at 897.

■ Pursuant to Rule 5.1, N.D.R.Crim.P., the magistrate may consider evidence which will later be inadmissible at trial. The rule of law set down in *Whipple, supra* 89 N.W.2d 881, and *Persons, supra* 201 N.W.2d 895, regarding the applicable standard of review when certiorari is taken to the district court from a probable cause determination in a preliminary examination, is still valid. Review by certiorari to the district court of an order of a committing magistrate holding a defendant to answer is limited to a determination of whether or not the magistrate exceeded the authority vested in him by the rule. *Green v. Whipple,* 89 N.W.2d 881 (N.D.1958); and *State v. Persons,* 201 N.W.2d 895 (N.D.1972).

Section 32–33–09, N.D.C.C., provides that the extent of review upon a writ of certiorari is as follows:

"32–33–09. *Extent of review.*—Except as otherwise provided by law, the review upon a writ of certiorari cannot be extended further than to determine whether the inferior court, tribunal, board, or officer has pursued regularly the authority of such court, tribunal, board, or officer."

It is well settled in this State that review by certiorari is limited to questions of jurisdiction. *City of Fargo v. Annexation Review Commission,* 148 N.W.2d 338 (N.D. 1967).

■ On appeal from a denial of a writ of certiorari, our standard of review is also limited to the question of jurisdiction as required by § 32–33–09, N.D.C.C. For an appellate court to broaden the scope of review beyond that exercised by the court in which certiorari was sought would be to frustrate the statutory purpose and permit counsel to accomplish by indirection what he cannot do directly. In the instant case, therefore, our review is limited to whether or not the committing magistrate exceeded his authority in binding Morrissey over for trial.

■ Under Rule 5.1, N.D.R.Crim.P., the magistrate is required to determine from the evidence if there is probable cause to believe that an offense has been committed

and that the defendant committed it. Review of the record in this case reveals that Dr. Thomas Henry, who performed the autopsy on Val Blade, testified to the fact that Blade was murdered. This satisfies the requirement of probable cause to believe an offense has been committed.

Norbert Sickler, an investigator for the North Dakota Bureau of Criminal Investigation, testified that he obtained signed statements for Morrissey, Trieb, and the minor, R. H., that implicated them in the murder of Val Blade. Sickler testified that Morrissey gave a voluntary statement on November 19, 1979. A copy of that statement is included in the record as State's Exhibit #5.

In *State v. Chaussee*, 138 N.W.2d 788, 792 (N.D.1965), we quoted with approval the following language of the United States Supreme Court in *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 1311, 93 L.Ed. 1879 (1949):

" 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' *McCarthy v. De Armit*, 99 Pa.St. 63, 69, quoted with approval in the *Carroll* opinion [*Carroll v. United States*] 267 U.S. [132], at page 161, 45 S.Ct. [280] at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790.

" 'These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' "

The foregoing quotation deals specifically with probable cause to arrest, but the term "probable cause" has the same meaning in the context of a decision to bind over a defendant for trial. Evidence which establishes probable cause is not necessarily evidence which would convict at trial. That is the very reason that hearsay and otherwise inadmissible evidence are allowed in a preliminary examination. Morrissey still has a right to trial by jury and can attempt to exclude evidence at his trial which was used in the preliminary examination—he is not entitled to a preliminary trial at the preliminary examination.

Counsel for Morrissey concedes that the statement of Morrissey is very damaging evidence of his involvement in the murder of Val Blade, but argues that the State, through Norbert Sickler, rebutted the evidence inculpating Morrissey in his statement. On cross-examination, counsel for Morrissey obtained testimony from Sickler to the effect that Morrissey never

312

hit, shot, or threw anything at Val Blade to the best of Sickler's knowledge. Counsel contends that the State's own witness impeached the State's case against Morrissey. We disagree.

The crime of murder is set out at § 12.1–16–01, N.D.C.C., which provides as follows:

"*12.1–16–01. Murder.* A person is guilty of murder, a class AA felony, if he

1. Intentionally or knowingly causes the death of another human being;

2. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; or

3. Acting either alone or with one or more other persons, commits or attempts to commit treason, robbery, burglary, kidnapping, felonious restraint, arson, gross sexual imposition, or escape and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of any person; except that in any prosecution under this subsection in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:

a. Did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid the commission thereof; and

b. Was not armed with a firearm, destructive device, dangerous weapon, or other weapon which under the circumstances indicated a readiness to inflict serious bodily injury; and

c. Reasonably believed that no other participant was armed with such a weapon; and

d. Reasonably believed that no other participant intended to engage in conduct likely to result in death or serious bodily injury.

Subsections 1 and 2 shall be inapplicable in the circumstances covered by subsection 2 of section 12.1–16–02."

We do not read the statute as requiring that someone hit, shoot, or throw something at someone else in order to be guilty of murder where a death has resulted. The statute requires that they intentionally or knowingly cause the death of another human being. One can cause the death of another without hitting, shooting, or throwing something at the victim by engaging in conduct which contributes to or results in the death of that other person. Section 12.1–02–01, N.D.C.C., provides as follows:

"*12.1–02–01. Basis of liability for offenses.*—1. A person commits an offense only if he engages in conduct, including an act, an omission, or possession, in violation of a statute which provides that the conduct is an offense.

2. A person who omits to perform an act does not commit an offense unless he has a legal duty to perform the act, nor shall such an omission be an offense if the act is performed on his behalf by a person legally authorized to perform it.

We agree that one can be present at the scene of a crime without being an accomplice, [*Zander v. S.J.K.*, 256 N.W.2d 713 (N.D.1977)]; but presence, taken in conjunction with other facts, can support a finding that a person is an accomplice to a crime. *State v. Anderberg*, 89 S.D. 75, 228 N.W.2d 631 (1975).

Morrissey is charged with "intentionally causing the death of Val Blade". "Intentionally" is defined in § 12.1–02–02(1)(a), N.D.C.C., as follows:

"*12.1–02–02. Requirements of culpability.*—1. For the purposes of this title, a person engages in conduct:

a. 'Intentionally' if, when he engages in the conduct, it is his purpose to do so."

We believe that Morrissey's statement is evidence of the fact that it was his "purpose" to "engage in conduct" which brought about the death of Val Blade. He admitted that "we killed Val Blade". He goes on to discuss how and where Blade's body was disposed of; how and where Blade was killed; and how he and his cohorts went about cleaning up the house to cover up evidence of the murder. Certainly, this statement, plus the testimony of various

witnesses as to the body being found at the place Morrissey and the others indicated, supports a finding of probable cause to bind him over for trial on the charge of murder. Sickler testified that the body was located at a spot which coincides with the information supplied to him by Morrissey and Trieb.

It is also interesting to note that counsel for Morrissey as part of his strategy, prevented Sickler from testifying as to things Morrissey told Sickler during the interview regarding the disappearance of Val Blade. Counsel's objection was that "there is a written statement present that will be sufficient for this matter". Now counsel on appeal from a denial of a writ of certiorari is asserting that the statement alone is insufficient to bind Morrissey over for trial and required corroborating evidence which is not in the record. One of the reasons the record has so few references to Morrissey is counsel's own tactics in keeping Morrissey's name out.

We affirm the order denying writ of certiorari and affirm the magistrate's decision that probable cause existed to bind Morrissey over for trial. We have discussed the merits of Morrissey's claim in order to prevent strategic tactics of counsel from bringing this case before this court a third time prior to bringing it to trial.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.