**In the Interest of R. R., a child.**

**Lannon V. SERRANO, Petitioner and Appellee,**

v.

**R. R., child; F. R. and I. R., parents; and Superintendent of the North Dakota Industrial School, Respondents and Appellants.**

**Civ. No. 9904.**

Supreme Court of North Dakota.

April 23, 1981.

Richard L. Schnell, State's Atty., Mandan, for petitioner and appellee. (Thomas Tuntland, State's Atty., Mandan, for petitioner at time of trial.)

Benjamin C. Pulkrabek, Mandan, for respondents and appellants.

PEDERSON, Justice.

In June 1980 a petition was filed in the Juvenile Court of Morton County alleging that R.R. is a delinquent child, sixteen years of age, and that he committed the crime of escape in violation of § 12.1–08–06, NDCC. Hearing was set before the juvenile court referee for October 22, 1980.

On October 6, 1980, the Morton County state's attorney filed a "Motion for Transfer," requesting the transfer of jurisdiction to the Morton County Court With Increased Jurisdiction. The motion was twice amended and the hearing thereon was held on October 31, 1980, resulting in a juvenile court order transferring jurisdiction. The appeal from the transfer order does not stay the transfer and the record does not contain any application for a stay under § 27–20–56(2), NDCC. We do not speculate as to the consequence of a failure to prosecute after a transfer of jurisdiction has been ordered. We affirm the order.

The argument is made, in behalf of R.R., that (1) the court erred in failing "to commit R.R. to an appropriate institution for study and a report on his mental condition," and (2) the court erred in finding that R. R. "was not treatable or amenable to treat-

ment as a juvenile through available facilities."

During the juvenile court hearing on the transfer motion, when the state's attorney announced that the petitioner was resting his case, counsel for R.R. moved for a dismissal, or that the hearing be held in abeyance until R.R. "can be sent down to Jamestown to determine whether or not at this time he is treatable." No reference was made at that time to the provisions of § 27–20–35, NDCC, which require the court to commit the child for 60 days to an appropriate institution, agency, or individual for study, and report *if the evidence indicates that the child may be suffering from mental retardation or mental illness.* In summarizing his case to the juvenile court and in argument to this court counsel relies significantly on § 27–20–35, NDCC.[1]

The only evidence in the record on R.R.'s mental condition was that which was received over the objection of R.R.'s counsel. That evidence indicated that there was no manifestation of mental illness. The state's attorney was examining a counselor from the Industrial School and the following transpired:

"Q. You are not a psychologist?

"A. No; I am not.

"Q. But working with students, do you believe you can see if a mental illness is developing?

"A. That would be difficult to answer.

"Q. Okay. Do you or don't you?

"A. Would you repeat the question, please.

"Q. Do you believe that you can see certain outward manifestations of mental illness?

1. Section 27–20–35, NDCC, states:
"1. If, at a dispositional hearing of a child found to be a delinquent or unruly child or at a hearing to transfer a child to another court under section 27–20–34, the evidence indicates that the child may be suffering from mental retardation or mental illness, the court before making a disposition shall commit the child for a period not exceeding sixty days to an appropriate institution, agency, or individual for study and report on the child's mental condition.

"2. If it appears from the study and report that the child is committable under the laws of this state as a mentally retarded or mentally ill child, the court shall order the child detained and direct that within ten days after the order the court resume proceedings in the juvenile court for the child's commitment to an appropriate institution or agency.
"3. If it does not so appear or the child is found not to be committable, the court shall proceed to the disposition or transfer of the child as otherwise provided by this chapter."

"MR. PULKRABEK: I object to the question. Insufficient foundation.

"THE COURT: I think a layman could determine that in some cases.

"Q. [Mr. Tuntland continuing] Do you believe you can recognize certain outward manifestations of mental illness?

"A. I believe a person could, yes.

"Q. You believe you can?

"A. I imagine I can. I guess I could.

"Q. Was [R.R.] behaving differently than any other normal person?

"A. No; his behavior was acceptable."

Counsel's objection to testimony discussing R.R.'s mental competency was inadvisable in light of his subsequent reliance upon § 27–20–35 which requires evidence of mental retardation or mental illness. Counsel now argues, in effect, that drug addiction and alcoholism are, as a matter of law, mental illnesses. He cites definitions from a March 1980 publication by the Commission on Professional and Hospital Activities, 1968 Green Road, Ann Arbor, Michigan 48105, called *"ICD–9–CM"*, which is designed for the classification of morbidity and mortality information for statistical purposes, and for the indexing of hospital records by disease and operations, for data storage and retrieval. However, for the purpose of commitment under the law of this State:

"Drug addiction and alcoholism do not per se constitute mental illness, although persons suffering from these conditions may also be suffering from mental illness." Section 25–03.1–02(10), NDCC.

See also, *In Interest of A. D. L.*, 301 N.W.2d 380 (N.D.1981).

The juvenile court did not err in rejecting R.R.'s motion that he "be sent down to Jamestown to determine whether or not at this time he is treatable." Because there was no evidence presented at the hearing that R.R. may be suffering from mental retardation or mental illness, the obligation of the court to commit R.R. for a 60-day study under § 27–20–35(1), NDCC, did not arise.

We believe, nevertheless, that because proceedings under the Uniform Juvenile Court Act should not be treated as strictly adversary proceedings, in the future the juvenile court should explore on its own for evidence of competency when the matter has been raised, even when it is only counsel's statement which raises it. We deem the proceeding under § 27–20–35 to be somewhat analagous to procedures authorized by §§ 12.1–04–03 through 12.1–04–10, NDCC, and the authority specified in Rule 28, NDRCrimP.

Hearings on the question of whether or not jurisdiction of an offense committed by a minor should be transferred to an adult court are governed by the provisions of § 27–20–34, NDCC. The transfer may be made if:

"The court finds that there are reasonable grounds to believe that:

(a) The child committed the delinquent act alleged;

(b) The child is not amenable to treatment or rehabilitation as a juvenile through available facilities;

(c) The child is not treatable in an institution for the mentally retarded or mentally ill; and

(d) The interests of the community require that the child be placed under legal restraint or discipline." Section 27–20–34(1)(b)(4), NDCC.

The juvenile court found that there are reasonable grounds to believe that (1) R.R. committed the delinquent act—escape; (2) R.R. is not amenable to treatment or rehabilitation as a juvenile through available facilities; (3) R.R. is not treatable in an institution for the mentally retarded or mentally ill; and (4) the interest of the community requires that R.R. be placed under legal restraint or discipline.

Counsel agrees that there is testimony in the record in support of these findings but states that there is also testimony that R.R. is chemically dependent and is treatable and

can be rehabilitated.[2] He argues that we are required to construe and effectuate the Uniform Juvenile Court Act:

"To provide for the care, protection, and wholesome moral, mental, and physical development of children coming within its provisions." Section 27–20–01(1), NDCC,

and

"Consistent with the protection of the public interest, to remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior and to substitute therefor a program of treatment, training and rehabilitation." Section 27–20–01(2), NDCC.

Although we have a number of times discussed the application of § 27–20–01, NDCC, to other types of proceedings covered by the Uniform Juvenile Court Act, e. g., *Matter of Estates of Josephsons*, 297 N.W.2d 444, 449 (N.D.1980), and *Hust v. Hust*, 295 N.W.2d 316, 319 (N.D.1980), we have not heretofore discussed its application to waiver hearings under § 27–20–34, NDCC. We have never construed the provisions of § 27–20–01, NDCC, in a manner to override completely other provisions of Chapter 27–20, NDCC, and we do not do so now.

■ A child whose behavior requires that he or she be treated as an adult does not come "within its [this chapter's] provisions"

as those terms are used in § 27–20–01(1). Under § 27–20–01(2), the obligation to remove the taint of criminality is to be applied "consistent with the protection of the public interest." If we accepted R.R.'s version of the application of § 27–20–01, every hearing under § 27–20–34 would result in the denial of the motion to transfer jurisdiction to an adult court. This could have the effect of repealing § 27–20–34, an absurd result. We do not construe statutes to permit absurdities. *In Interest of B. L.*, 301 N.W.2d 387, 390 (N.D.1981).

■ Another argument made by R.R.'s counsel is that "nowhere in the transcript is there any indication that R.R. has ever committed a violent crime," accordingly he states that "there is no good reason for refusing to maintain" him at the Industrial School. The role played at a transfer hearing of the "nature of the offense," whether or not the offense is one of violence, is discussed in two recent cases—*In Interest of P. W. N.*, 301 N.W.2d 636, 643 (N.D.1981), and *In Interest of A. D. L.*, supra, 301 N.W.2d at 386. In both cases we said that the nature of the offense relates to the determination of the course of treatment required and, accordingly, to the availability of the required facilities and the child's amenability to that treatment. There is no requirement that the juvenile court find that the child committed a "violent" delin-

---

**2.** Duane Lawrence, Superintendent of the State Industrial School, testified that, in his opinion, after four years off and on, there had been no change in R.R.'s behavior and he "questioned whether the Industrial School has been or will be helpful to [R.R.]."

Rodney Raasch, an addiction counselor at the State Hospital who had been involved in two attempts to treat R.R.'s chemical dependency, after describing R.R.'s unwillingness to cooperate, testified that, if a person comes in for dependency treatment and will not cooperate, he is *not treatable.*

Ross Birney, a counselor at the State Industrial School, speaking of available programs that assist in behavior correction, testified that R.R. has not benefited and inferred that he was *not amenable* to those programs.

Another State Industrial School counselor, Barton Daly, testified that after R.R. having been there for four years with no progress, it appears that R.R. is *not amenable to treatment.*

R.R., who was called as a witness in his own behalf, testified: "And I could be *amenable to treatment.*" [Emphasis added.] After hearing R.R.'s testimony, Rodney Raasch was recalled and testified as follows:

"Q. [By Mr. Pulkrabek] Mr. Raasch, you were in court. Did you hear [R.R.'s] testimony?

"A. Yes; I did.

"Q. *From that testimony*, could you say that he is *not treatable*?

"A. No; I couldn't.

"Q. Now, someone who is chemically dependent, are they *committable* to an institution?

"A. Yes; they are.

"Q. And you say that [R.R.] is chemically dependent?

"A. I believe so, yes." [Emphasis supplied.]

quent act before jurisdiction can be transferred to an adult court.

It could perhaps be argued that transfer orders under § 27–20–34 are not "final orders" and are therefore not appealable. No such argument was made so we assume that this appeal is from a final order. We have said that orders, judgments and decrees appealed to this court pursuant to § 27–20–56, NDCC, are reviewable in this court "in a manner similar to the former trial de novo." *In Interest of P. W. N., supra.* The statute requires that we give "appreciable weight to the findings of the juvenile court."

█ We have explained that the term "reasonable grounds to believe," as used in § 27–20–34(1)(b)(4), is equivalent to the term "probable cause," like that required in a preliminary hearing. *In Interest of A. D. L., supra,* 301 N.W.2d at 383. See also, *In Interest of P. W. N., supra,* 301 N.W.2d at 641, and *In Interest of K. G.,* 295 N.W.2d 323 (N.D.1980). Thus if it appears to be so or there is a definite probability based on substantial evidence, the standard of probable cause has been met. *State v. Persons,* 201 N.W.2d 895, 897 (N.D.1972). See Rule 5.1, NDRCrimP; 22 CJS, Criminal Law, §§ 345 and 356; and 21 Am.Jur.2d, Criminal Law, § 443. Under this standard, all doubts are not required to be resolved in favor of the child.

█ R.R.'s record alone indicates a strong probability that R.R. is *not amenable to treatment* or rehabilitation at the Industrial School or at the State Hospital, that he is *not treatable* at the State Hospital, and that the interests of the community require that he be placed under legal restraint or discipline. That record, as best we can glean it from the testimony presented, is:

1976 Oct. 11   Sent to the Industrial School by the Cavalier County Juvenile Court.

1976 (no date)   Involved in homosexual activities at the Industrial School.

1977 Feb. 28   Transferred to State Youth Authority (Ch. 27–21, NDCC) with recommendation to be sent to State Hospital for treatment.

1977 Sept. 9   Sent to the Industrial School by the Cavalier County Juvenile Court.

1977 Oct. 10   Transferred to State Youth Authority with recommendation that he be returned to his parents.

1978 June 12   Transferred to Industrial School from State Youth Authority.

1979 Jan. 18   Transferred to State Youth Authority with notation that the Industrial School program had been satisfactorily completed.

1979 Aug. 22   Absented himself from State Hospital without leave.

1979 Sept. 20   Sent to Industrial School by the Cavalier County Juvenile Court.

1979 (no date)   Participated in Narcotics Anonymous.

1979 Oct. 7   Absented himself from Industrial School without leave.

1979 Oct. 8   Returned to Industrial School.

1979 Oct. 28   Absented himself from Industrial School without leave.

1979 Nov. 4   Returned to Industrial School.

1980 Mar. 29   Absented himself from Industrial School without leave.

1980 Apr. 2   Returned to Industrial School.

1980 May 30   Transferred to State Hospital for drug and alcohol treatment.

1980 June 9   Transferred back to Industrial School.

1980 June 22   Absented himself from Industrial School without leave.

1980 Sept. 18   Returned to Industrial School.[3]

In addition, the transcript of the hearing contains opinions expressed by Industrial School personnel and State Hospital personnel that R.R. is not amenable to treatment or rehabilitation as a juvenile through

---

**3.** Obviously there are some unexplained gaps in this itemization which do not bear upon the issues before us.

available facilities and is not treatable in an institution for the mentally retarded or mentally ill. These opinions distinguish this case from *In Interest of A. D. L., supra,* where the Industrial School personnel testified that, in their opinion, A. D. L. was treatable and amenable to treatment. The "reasonable grounds to believe" standard has been amply met. The order of transfer is affirmed.

SAND, J., concurs.

ERICKSTAD, C. J., concurs in the result.

VANDE WALLE, Justice, dissenting.

I dissent. The majority opinion glosses over, by the use of overly strict definitions, the evidence that R.R. has a chemical-dependency problem. The majority opinion does not deny that R.R. has such a problem. It apparently concludes that if he does have such a problem it is an insufficient reason to refuse to transfer him to adult court because those words are not precisely listed in the statutes as reasons for not transferring. This conclusion is contrary to our conclusion in *In Interest of A. D. L.,* 301 N.W.2d 380 (N.D.1981).

The juvenile court Act recognizes that juveniles may have problems which lead to or contribute to their delinquent acts. Thus Section 27–20–34, N.D.C.C., permits a juvenile to be transferred to adult court if, among other reasons, the court finds that there are reasonable grounds to believe that:

"(b) The child is not amenable to treatment or rehabilitation as a juvenile through available facilities;

"(c) The child is not treatable in an institution for the mentally retarded or mentally ill; ... "

Surely any concerned person by now is aware that juveniles as well as adults have alcohol or drug problems which lead to or contribute to their delinquent acts. Just as surely they are aware that juveniles are being treated in facilities for those problems within this State. The majority opinion apparently concludes that if R.R. has such a problem he nevertheless is not mentally ill and therefore does not come within the above-quoted statutory provision. If that is the position of the majority opinion it takes too narrow a view of our statutes. I am unwilling to concede that if the juvenile's problem is due to drugs or alcohol for which he may receive treatment, our juvenile court Act does not allow for treatment of that problem as an alternative to transfer to adult court. A construction of our statutes that does not allow treatment for chemical dependency in lieu of transfer would show little respect on our part for the intent of the Legislature in attempting to rehabilitate juveniles and protect them from a permanent criminal record.

If we need apply over-technical definitions, then I would suggest the following: Section 27–20–34(1)(b)(4)(c) prevents transfer to adult court if the juvenile is treatable in an institution for the mentally retarded or mentally ill; Chapter 25–03.1, N.D.C.C., provides for involuntary commitment of persons who require treatment, including mentally ill persons or a person who is an alcoholic or a drug addict (contrary to the impression given in the majority opinion); involuntary commitment for persons who require treatment may be to the State Hospital; the State Hospital is an institution for the mentally ill; therefore, R.R. is treatable in an institution for the mentally ill. Although such an approach may be labeled as simplistic, it is no more simplistic than ignoring the fact that R.R. has a chemical-dependency problem which may be corrected with treatment.

R.R.'s record is not good, but that record indicates R.R. has not been required, through involuntary-commitment procedures, to complete a program for persons who are chemically dependent. It is possible that such a program will not be successful in his instance. Our society will not be successful in attempting to rehabilitate all juveniles who are in trouble. However, un-

til we have tried for that rehabilitation with those means at our disposal, I am unwilling to concede failure.

Because the evidence indicates R.R. has a chemical-dependency problem and because he has not been required to complete a treatment program for that dependency, I would reverse the decision of the juvenile court and remand with instructions that involuntary-commitment procedures be in-stituted whereby R.R. will be committed to a public or private treatment facility for chemical dependency.

PAULSON, J., concurs.